THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:11-cv-00083-MR-DLH

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for THE BANK OF ASHEVILLE, )<br><br>Plaintiff, )<br><br>vs. )<br><br>DION HOLDINGS, LLC, NICHOLAS DIMITRIS, and PAUL RANTZOS, )<br><br>Defendants. ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 18].

## I. PROCEDURAL BACKGROUND

On January 13, 2011, The Bank of Asheville commenced this action against the Defendants Dion Holdings, LLC ("Dion Holdings"), Nicholas Dimitris ("Dimitris"), and Paul Rantzos ("Rantzos") (collectively, "Defendants") in the General Court of Justice, Superior Court Division, in Buncombe County, North Carolina, seeking to recover monies due and owing under a promissory note. [Complaint, Doc. 1-2 at 9].

On January 21, 2011, The Bank of Asheville was closed and placed in the hands of the North Carolina Commissioner of Banks. [Affidavit of Barbara Jayne Rose ("Rose Aff."), Doc. 20-2 at ¶ 7]. Also on January 21, 2011, the Commissioner of Banks appointed the Federal Deposit Insurance Corporation as Receiver of The Bank of Asheville ("FDIC-R" or "Plaintiff"), and FDIC-R accepted the appointment. [Id.; Acceptance of Appointment, Doc. 20-2 at 9].

On March 14, 2011, the Defendants filed their Answer, wherein they denied the material allegations of the Complaint based chiefly upon their right "to see original copies of any and all documents which the Plaintiff is attempting to utilize against them for the purpose of collection efforts as well as this current action." [Answer, Doc. 1-1 at 13]. In addition, the Defendants filed a Counterclaim, stating claims for breach of fiduciary duty, unfair and deceptive trade practices, negligence/negligent nondisclosure, and civil conspiracy. [Counterclaim, Doc. 1-2 at 1].

On April 11, 2011, FDIC-R removed the case to this Court pursuant to 12 U.S.C. § 1819(b)(2)(B). [Notice of Removal, Doc. 1]. Thereafter, on May 11, 2011, FDIC-R filed its Reply to the Defendants' Counterclaim. In addition to denying all of the allegations in the Counterclaim, FDIC-R also

2

raised the defenses of unclean hands/laches, statutes of limitation, waiver and estoppel, and statute of frauds. [Reply to Counterclaim, Doc. 8].

FDIC-R filed a Motion for Summary Judgment against the Defendants on August 31, 2012. [Doc. 18]. The Defendants have not filed any opposition to FDIC-R's Motion.

## II. THE SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the case." News and Observer Pub. Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010). A "genuine dispute" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A party asserting that a fact cannot be genuinely disputed must support its assertion with citations to the record. Fed. R. Civ. P. 56(c)(1). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). If

3

this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. Id.

In considering the facts for the purposes of a summary judgment motion, the Court must view the pleadings and materials presented in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. Adams v. Trustees of the Univ. of N.C.-Wilmington, 640 F.3d 550, 556 (4th Cir. 2011). Where the non-moving party has not responded to the motion, however, the Court may consider the forecast of evidence presented by the movant to be undisputed for the purposes of the present motion. See Fed. R. Civ. P. 56(e)(2).

## III. FACTUAL BACKGROUND

In light of the Defendants' failure to respond to the Plaintiff's Motion, the following forecast of evidence is not in dispute. On July 22, 2008, Dion Holdings executed a Promissory Note ("Note") in the principal amount of $637,500.00, with an original maturity date of July 22, 2010. [Complaint, Doc. 1-2 at ¶ 4; Note, Doc. 21-1; Affidavit of Gary Ellis ("Ellis Aff."), Doc. 20-1 at ¶ 9]. The Note was secured by a Deed of Trust, dated July 22, 2008 ("Deed of Trust"), which encumbered the real property known as Lot 127, Phase 1A, Seven Falls Subdivision, Hendersonville, North Carolina

28739. [Complaint, Doc. 1-2 at ¶ 8; Deed of Trust, Doc. 21-2; Ellis Aff., Doc. 20-1 at ¶ 10].

As further consideration for the Note, Defendants Dimitris and Rantzos each executed a Commercial Guaranty whereby they each guaranteed the punctual payment and satisfaction of the Note by Dion Holdings. [Complaint, Doc. 1-2 at ¶ 11; Commercial Guaranties, Docs. 21-3, 21-4; Ellis Aff. Doc. 20-1 at ¶ 11].

The Note is past due and in default. [Complaint, Doc. 1-2 at ¶ 6; Ellis Aff., Doc. 20-1 at ¶ 12]. As of August 8, 2012, the balance due and owing under the Note was $741,929.49, including interest at the rate of $123.96 per diem from May 22, 2010 through August 8, 2012. [Ellis Aff., Doc. 20-1 at ¶ 13].

By letters dated November 15, 2010, counsel for The Bank of Asheville sent a notice to the Defendants that they were in default under the Note and the balance due and owing under the Note. [Ellis Aff., Doc. 20-1 at ¶ 15; Letters, Doc. 20-1 at 8]. Notwithstanding their receipt of this notice, none of the Defendants has paid the outstanding balance on the Note. [Ellis Aff., Doc. 20-1 at ¶ 17].

On January 13, 2011, The Bank of Asheville filed this action against Defendants Dion Holdings, Dimitris, and Rantzos to recover the amounts

due and owing under the Note, plus interest.[1] In addition, The Bank of Asheville notified the Defendants in its Complaint that it was seeking to recover its reasonable attorneys' fees and that the Defendants could avoid payment of such attorneys' fees if they paid all sums due under the Note within five days after service of the Complaint. [Complaint, Doc. 1-2 at ¶ 17; Ellis Aff., Doc. 20-1 at ¶ 18].

IV. DISCUSSION

    A. Defendants' Liability for Repayment of the Note

At the time of their execution, the Note and Guarantees involved a loan made by The Bank of Asheville to Dion Holdings. As Receiver for The Bank of Asheville, FDIC-R has succeeded to all rights, titles, powers, and privileges of The Bank of Asheville. See 12 U.S.C. § 1821(c)(3)(A). Accordingly, FDIC-R is the holder of the Note and thus has standing to bring this action to recover amounts due and owing under the Note. Id.

In its Complaint, Plaintiff seeks to recover monies due and owing on the Note. When it executed the Note, Dion Holdings promised to pay to The Bank of Asheville the principal amount of $637,500.00. [Note, Doc. 21-1]. Dion Holdings failed to make any payment under the Note, and thus, Dion

---

[1] After the filing of this action, on February 18, 2011, FDIC-R assigned the Note, the Deed of Trust, the Commercial Guaranties executed by Dimitris and Rantzos, and all documents related to the underlying loan transaction to KeyCorp Real Estate Capital Markets, Inc. for servicing. [Rose Aff., Doc. 20-2 at ¶ 10; Ellis Aff., Doc. 20-1 at ¶ 7].

Holdings has defaulted on its obligations under the Note. As a result of Dion Holdings' default under the Note, Plaintiff is entitled to recover from Dion Holdings the sum of $741,929.49, together with interest at the rate of $123.96 per day from and after August 8, 2012.

As further consideration for the Note, Defendants Dimitris and Rantzos each executed a Commercial Guaranty by which each "guarantee[d] full and punctual payment and satisfaction of the indebtedness of [Dion Holdings] to Lender." [Guaranties, Docs. 21-3, 21-4; Ellis Aff., Doc. 20-1 at ¶ 11]. Each Guaranty took effect "when received by Lender" and "continue[d] in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied." [Guaranties, Docs. 21-3, 21-4]. When Dion Holdings defaulted on its obligations under the Note, Defendants Dimitris and Rantzos became obligated for payment of the Note. As a result of Dion Holdings' default under the Note, Plaintiff is entitled to recover from Defendants Dimitris and Rantzos the sum of $741.929.49, together with interest at the rate of $123.96 per day from and after August 8, 2012.

7

## B. Award of Attorneys' Fees

In addition to the recovery of the outstanding indebtedness, the Plaintiff also seeks to recover its reasonable attorneys' fees incurred in this action to enforce the Note. [Complaint, Doc. 1-2 at ¶ 17]. Under North Carolina law, a party generally cannot recover attorneys' fees "unless such a recovery is expressly authorized by statute." Stillwell Enters., Inc. v. Interstate Equip. Co., 300 N.C. 286, 289, 266 S.E.2d 812, 814 (1980). Section 6-21.2 of the North Carolina General Statutes allows for an award of attorneys' fees in actions to enforce obligations owed under a promissory note or other "evidence of indebtedness" that itself provides for payment of attorneys' fees. That section provides, in pertinent part, as follows:

> Obligations to pay attorneys' fees upon any note, conditional sale contract or other evidence of indebtedness, in addition to the legal rate of interest or finance charges specified therein, shall be valid and enforceable, and collectible as part of such debt, if such note, contractor other evidence of indebtedness be collected by or through any attorney at law after maturity….

N.C. Gen. Stat. § 6-21.2.

In the Note, Dion Holdings agreed as follows:

> Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal

8

> expenses, whether or not there is a lawsuit, including reasonable attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

[Note, Doc. 21-1]. Similarly, in their Guaranties, Defendants Dimitris and Rantzos each agreed as follows:

> Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

[Guaranties, Docs. 21-3 at 2, 21-4 at 2]. Therefore, pursuant to N.C. Gen. Stat. § 6-21.2, the Plaintiff may seek recovery of its attorneys' fees in this action.

Section 6-21.2 further provides that when a note or other evidence of indebtedness provides for the payment of reasonable attorneys' fees by the

debtor without specifying any specific percentage, "such provision shall be construed to mean fifteen percent (15%) of the 'outstanding balance' owing on said note…." N.C. Gen. Stat. § 6-21.2(2). Section 6-21.2 defines "outstanding balance" to mean "the principal and interest owing at the time suit is instituted to enforce any security agreement securing payment of the debt and/or to collect said debt." N.C. Gen. Stat. § 6-21.2(5). Because the Note and the Guaranties do not specify an amount of fees to be awarded, the Plaintiff is entitled to recover from the Defendants its attorneys' fees in an amount equal to 15% of the outstanding balance of the Note.

Finally, section 6-21.2 requires a creditor to notify all parties sought to be held on the obligation that the creditor will seek to enforce the attorneys' fees provision contained in the note or other evidence of indebtedness and that if the party pays the outstanding balance within five days from the mailing of such notice, then the attorneys' fee obligation shall be void. N.C. Gen. Stat. § 6-21.2(5). The undisputed forecast of evidence demonstrates that the Plaintiff complied with this provision by stating in Paragraph 17 of the Complaint that it intended to enforce the attorneys' fees provisions contained in the Note and Guaranties and that if Dion Holdings, Dimitris, and Rantzos paid the outstanding balance owing on the Note within five days from receipt of such notice, then the attorneys' fee obligation would be

void. [See Complaint, Doc. 1-2 at ¶ 17]. Because the provisions in the Note and Guaranties regarding payment of attorneys' fees are valid and enforceable and because neither Dion Holdings, Dimitris, nor Rantzos has paid the outstanding balance on the Note, the Plaintiff is entitled to recover from the Defendants its attorneys' fees in an amount of 15% of the outstanding balance of the Note at the time that suit was filed on January 13, 2011, or $100,234.90 (15% of $668,232.71).

### C. Defendants' Counterclaims

In their Answer/Counterclaim, Defendants allege counterclaims for breach of fiduciary duty, unfair and deceptive trade practices, negligence/negligent non-disclosure, and civil conspiracy. In seeking the dismissal of the Defendants' counterclaims, FDIC-R relies upon 12 U.S.C. § 1823(e), which provides, in pertinent part, as follows:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement—
>
> (A) is in writing,
>
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

> (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1). These statutory requirements are derived from what is known as the D'Oench doctrine, which "prohibits claims based upon agreements which are not properly reflected in the official books or records of a failed bank or thrift." Resolution Trust Corp. v. Allen, 16 F.3d 568, 574 (4th Cir. 1994) (citing D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942)). Generally stated, "[t]he purpose of the doctrine and the statute which codifies it is to permit the FDIC to rely on bank records and to protect the FDIC from secret agreements." FDIC v. Hadid, 947 F.2d 1153, 1157 (4th Cir. 1991). The doctrine is applicable regardless of whether the borrower characterizes his claim based upon the agreement as one for breach of contract or one for fraud. See Langley v. FDIC, 484 U.S. 86, 91-93, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987) (noting that misrepresentations, even those amounting to fraud, constitute §1823(e) "agreements"). A party must satisfy all four requirements of §1823(e)(1) in order to enforce an "agreement" against FDIC. Young v. FDIC, 103 F.3d 1180, 1187 (4th Cir. 1997).

In the present case, the Defendants' counterclaims against the Plaintiff revolve around the Defendants' assertion that The Bank of Asheville fraudulently induced them to execute the Note and Commercial Guaranties by misrepresenting or failing to disclose how the funds from the loan were to be used, that the loan required compliance and/or performance by Keith Vinson and/or his companies, and other details surrounding the loan. [See Answer/Counterclaim, Docs. 1-1 at 13, 1-2 at 1]. The Defendants are precluded from asserting counterclaims based on alleged oral misrepresentations and fraudulent omissions by virtue of § 1823(e). See Langley, supra; Allen, 16 F.3d at 574 (holding that allegations of negligence and breach of fiduciary duty are precluded under § 1823(e) "because if such claims exist they arise out of unrecorded agreements"); FDIC v. State Bank of Virden, 893 F.2d 139, 144 (7th Cir. 1990) (debtor's claim based on fraudulent omission precluded under § 1823(e); "[i]f the debtor can't use the bank's lies to block repayment, it can't use material omissions either -- for the half-truth is one form of lie"); FDIC v. Bell, 892 F.2d 64, 66 (10th Cir. 1989) ("If fraudulent warranties fall within the reach of [§ 1823(e)], it is irrelevant whether the fraud was caused by overt misrepresentation or deceitful omission."); Fairfield Six/Hidden Valley P'ship v. Resolution Trust Corp., 860 F.Supp. 1085, 1088 (D. Md. 1994)

13

(holding plaintiff's claims for fraud and negligent misrepresentation based on oral promises to provide financing were barred under § 1823(e)). Accordingly, FDIC-R's motion for summary judgment on the Defendants' counterclaims is granted.

**V. ORDER**

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 18] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff is hereby awarded against the Defendants, jointly and severally, the sum of Seven Hundred and Forty-One Thousand Nine Hundred and Twenty-Nine Dollars and Forty-Nine Cents ($741,929.49), together with interest at the rate of One Hundred and Twenty-Three Dollars and Ninety-Six Cents ($123.96) per day from and after August 8, 2012, plus the sum of One Hundred Thousand Two Hundred and Thirty-Four Dollars and Ninety Cents ($100,234.90) as an award of reasonable attorneys' fees.

A Judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**   Signed: December 12, 2012

Martin Reidinger
United States District Judge