**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

**CIVIL CASE NO. 1:11-cv-00083-MR-DLH**

| | | |
|---|---|---|
| **FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for THE BANK OF ASHEVILLE,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **MEMORANDUM OF DECISION AND ORDER** |
| | ) ) | |
| **DION HOLDINGS, LLC, NICHOLAS DIMITRIS, and PAUL RANTZOS,** | ) ) ) | |
| **Defendants.** | ) ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Defendant Paul Rantzos's "Motion for Relief from Plaintiff's Motion for Summary Judgment [sic] and Motion to Reconsider Plaintiff's Motion for Summary Judgment Against Defendant Paul Rantzos" [Doc. 24].

## I.     PROCEDURAL BACKGROUND

On January 13, 2011, The Bank of Asheville commenced this action against the Defendants Dion Holdings, LLC ("Dion Holdings"), Nicholas Dimitris ("Dimitris"), and Paul Rantzos ("Rantzos") (collectively, "Defendants") in the Buncombe County General Court of Justice, Superior

Court Division, seeking to recover monies due and owing under a promissory note. [Complaint, Doc. 1-2 at 9].

On January 21, 2011, The Bank of Asheville was closed and placed in the hands of the North Carolina Commissioner of Banks. [Affidavit of Barbara Jayne Rose ("Rose Aff."), Doc. 20-2 at ¶7]. Also on January 21, 2011, the Commissioner of Banks appointed the Federal Deposit Insurance Corporation as Receiver of The Bank of Asheville ("FDIC-R" or "Plaintiff"), and FDIC-R accepted the appointment. [Id.; Acceptance of Appointment, Doc. 20-2 at 9].

On March 14, 2011, the Defendants filed their Answer and a Counterclaim, asserting counterclaims for breach of fiduciary duty, unfair and deceptive trade practices, negligence/negligent nondisclosure, and civil conspiracy. [Answer and Counterclaim, Doc. 1-1 at 13]. At the time of the filing of the Answer and Counterclaim, all of the Defendants were represented by attorney David Payne.

On April 11, 2011, FDIC-R removed the case to this Court pursuant to 12 U.S.C. § 1819(b)(2)(B). [Notice of Removal, Doc. 1]. Thereafter, on May 11, 2011, FDIC-R filed its Reply to the Defendants' Counterclaim. In addition to denying all of the allegations in the Counterclaim, FDIC-R also

raised the defenses of unclean hands/laches, statutes of limitation, waiver and estoppel, and statute of frauds. [Reply to Counterclaim, Doc. 8].

On December 29, 2011, the Court entered a Pretrial Order and Case Management Plan setting a dispositive motions deadline of September 1, 2012, and setting this matter for trial during the January 14, 2013 trial term. [Pretrial Order, Doc. 14].

On June 25, 2012, attorney David E. Matney, III of Matney & Associates, P.A. filed a Notice of Substitution of Counsel with the Clerk of Court, thereby substituting himself as counsel of record for Defendant Paul Rantzos. [Notice of Substitution, Doc. 26].

On August 31, 2012, FDIC-R filed a Motion for Summary Judgment against the Defendants. [Motion for Summary Judgment, Doc. 18]. None of the Defendants, including Rantzos, filed any opposition to FDIC-R's Motion.

After three and a half months of inactivity, and with the January 14, 2013 trial date quickly approaching, the Court addressed FDIC-R's summary judgment motion on December 13, 2012. Noting the lack of opposition by any of the Defendants, the Court considered the forecast of evidence presented by FDIC-R to be undisputed. Considering the substance of the motion, the Court entered an Order granting summary

judgment in favor of FDIC-R.  [Memorandum of Decision and Order, Doc. 22].  A Judgment was entered the same day.  [Judgment, Doc. 23].

Thereafter, on December 21, 2012, Rantzos filed the present Motion for Relief pursuant to Rule 60 of the Federal Rules of Civil Procedure. [Rule 60 Motion, Doc. 24].  FDIC-R filed a Response in opposition to Rantzos's Motion on January 4, 2013.  [Doc. 26].  Rantzos filed a Reply in support of his Motion on January 11, 2013.  [Doc. 27].

Having been fully briefed, this matter is ripe for disposition.

## II.    FACTUAL BACKGROUND

On July 22, 2008, Dion Holdings executed a Promissory Note ("Note") in the principal amount of $637,500.00, with an original maturity date of July 22, 2010.  [Complaint, Doc. 1-2 at 9 ¶4; Note, Doc. 21-1 at 2; Affidavit of Gary Ellis ("Ellis Aff."), Doc. 20-1 at ¶ 9].  The Note was secured by a Deed of Trust, dated July 22, 2008 ("Deed of Trust"), which encumbered the real property known as Lot 127, Phase 1A, Seven Falls Subdivision, Hendersonville, North Carolina 28739. [Complaint, Doc. 1-2 at 9 ¶8; Deed of Trust, Doc. 21-2; Ellis Aff., Doc. 20-1 at ¶10].

As further consideration for the Note, Defendant Rantzos executed a Commercial Guaranty, whereby he guaranteed the punctual payment and

satisfaction of the Note by Dion Holdings.[1] [Complaint, Doc. 1-2 at 10 ¶13; Rantzos Commercial Guaranty, Doc. 21-4; Ellis Aff. Doc. 20-1 at ¶11]. Rantzos's Commercial Guaranty specifically provides, in pertinent part, as follows:

> For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender…
>
> …The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, reasonable attorneys' fees, *arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired,* that Borrower individually or collectively or interchangeably with others, *owes or will owe* Lender.…
> …
>
> …THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, *NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS.*

---

[1] The Guaranty is dated July 22, 2008 but Rantzos claims that he did not execute the document until September 9, 2008, as he was out of the country at the time of the closing. [See Affidavit of Paul Rantzos ("Rantzos Aff."), Doc. 24-1 at ¶¶3, 10 (mis-numbered as second paragraph 8)].

[Rantzos Commercial Guaranty, Doc. 21-4 (emphasis added)].

On January 13, 2011, The Bank of Asheville commenced this action against Defendants Dion Holdings, Dimitris, and Rantzos to recover the amounts due and owing under the Note, plus interest. [Complaint, Doc. 1-2 at 9]. As noted previously, attorney David Payne represented all three Defendants until attorney David E. Matney, III of Matney & Associates, P.A. entered an appearance on behalf of Rantzos on June 25, 2012.

Although Matney was the only attorney who formally made an appearance on behalf of Rantzos, attorney Amy Mody, an associate with Matney's law firm, served as the "primary contact person" for the case. [Affidavit of Amy P. Mody, Doc. 24-5 at ¶6. Mody was actively involved in all aspects of this litigation, including communicating with FDIC-R's counsel, exchanging initial disclosures, propounding discovery, and attempting to mediate this matter. [Id. at ¶¶7-10].

On August 31, 2012, the day that FDIC-R filed its Motion for Summary Judgment, Mody was copied on an email to David Matney from FDIC-R's counsel, Derek Allen, discussing certain discovery requests being made pursuant to a Confidentiality Agreement. [Id. at ¶11]. The parties continued to correspond about the terms of a Confidentiality Agreement between August 31, 2012 and September 12, 2012; however, there was no

mention in these communications about a summary judgment motion having been filed. [Id. at ¶12]. After September 12, 2012, Mody had no further communications with FDIC-R's counsel. [Id. at ¶13].

As noted above, FDIC-R filed its Motion for Summary Judgment on August 31, 2012. The Court's ECF docket indicates that the Motion for Summary Judgment was filed at 3:37 p.m. and that a Notice of Electronic Filing (NEF) was sent to Matney and the other attorneys of record at that time. Attorney Matney has no independent recollection of receiving an NEF regarding the motion but concedes that he was deemed to have such notification on August 31, 2012. [Affidavit of David E. Matney, III ("Matney Aff."), Doc. 24-6 at ¶7]. Because no notice of appearance had identified Mody as an attorney in this action for Rantzos and thus she was not listed as counsel of record in the case, Mody did not receive an NEF regarding the filing of FDIC-R's Motion for Summary Judgment. [Mody Aff., Doc. 24-5 at ¶14].

On or around September 5, 2012, Mody received a state court notice, dated August 31, 2012, setting a hearing on a motion for summary judgment in an unrelated state court matter involving another bank and the same Defendants named in this action. [Id. at ¶16]. After receiving the notice, Mody sent an email to the firm's office assistant instructing her to

calendar certain deadlines pertaining to the state court summary judgment action. [Id. at ¶17].

Matney automatically receives copies of all emails sent to the office assistant's inbox and therefore presumably saw Mody's email regarding the calendaring of deadlines for the state court summary judgment motion. Mody believes that Matney must have mistakenly thought that this email was in reference to the summary judgment motion in this federal action and therefore mistakenly assumed that Mody was aware of the federal summary judgment motion.[2]  [Id. at ¶20].  Matney never discussed the pending summary judgment motion with Mody.  As a result, no response to the Motion for Summary Judgment was ever filed on behalf of Rantzos. [Matney Aff., Doc. 24-6 at ¶10].

## III.   ANALYSIS

Rantzos's motion seeks relief from the Judgment pursuant to Federal Rule of Civil Procedure 60(b).  Because Rantzos's motion was filed within twenty-eight days of the entry of Judgment, however, the Court concludes that his motion is more properly construed as a motion to alter or amend the judgment pursuant to Rule 59(e).  See Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 412 (4th Cir. 2010); MLC Automotive, LLC v. Town of

_____

[2] Matney himself has no independent recollection of these events.  [Matney Aff., Doc. 24-6 at ¶9].

Southern Pines, 532 F.3d 269, 277 (4th Cir. 2008); Dove v. CODESCO, 569 F.2d 807, 809 (4th Cir. 1978).

The Fourth Circuit has recognized three grounds for altering or amending a judgment under Rule 59(e): "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Pacific Ins. Co. v. American Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). Rule 59(e) is considered an "extraordinary remedy" which the Fourth Circuit has cautioned should be used only in exceptional circumstances. Id. Such motions should not be used "to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." Id. Ultimately, the decision to grant or deny a Rule 59(e) motion is a matter within the Court's discretion. See Robinson, 599 F.3d at 407.

Rantzos does not contend that there has been an intervening change in the controlling law, or that there is any new evidence that must be accounted for. Thus, the Court need only consider whether relief is warranted under the third prong of Rule 59(e).

After carefully reviewing Rantzos's motion, the Court concludes that vacating the Judgment is not necessary to correct a clear error of law or prevent manifest injustice. A Pretrial Order and Case Management Plan was entered in this matter on December 29, 2011, establishing September 1, 2012, as the deadline for the filing of dispositive motions. Thus, Rantzos's counsel "knew full well that the deadline for dispositive motions was pending." Robinson, 599 F.3d at 408. Counsel further knew that, pursuant to the Local Rules of this Court, any filing in this matter would be delivered only by email. See id.; see also LCvR 5.2.1(B) (requiring electronic filing of all documents unless express authorization is provided to file otherwise). For whatever reason, whether it was simply an oversight or neglect, attorney Matney failed to take notice of the August 31, 2012 electronic notification regarding FDIC-R's summary judgment. Matney, however, was the only attorney who had made a notice of appearance on behalf of Rantzos at the time of the filing of the summary judgment motion. Therefore, Matney was the only person who would have received notification of that filing.[3]

---

[3] Both Matney and Mody state in their Affidavits that FDIC-R's counsel did not communicate with them about the summary judgment motion after it was filed, nor did they receive a copy of the summary judgment by mail or facsimile. [Mody Aff., Doc. 24-5 at ¶15; Matney Aff., Doc. 24-6 at ¶11]. FDIC-R's counsel, however, was not obligated to provide a hard copy of the motion to them, as counsel properly effected service of the motion by filing it electronically. That is one of the many purposes of mandatory

As both the Supreme Court and the Fourth Circuit repeatedly have recognized, "a party voluntarily chooses his attorney as his representative in the action, and, thus, he cannot later 'avoid the consequences of the acts of omissions of this freely selected agent.'" <u>Robinson</u>, 599 F.3d at 409 (quoting <u>Link v. Wabash R.R. Co.</u>, 370 U.S. 626, 633-34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). "Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts which can be charged upon the attorney." <u>Link</u>, 370 U.S. at 634, 82 S.Ct. 1386 (internal quotation marks and citation omitted). Therefore, counsel's neglect in failing to take note of the notification of the electronic filing of the Motion for Summary Judgment and to respond to it in a timely manner simply does not justify granting Rantzos the extraordinary relief he requests under Rule 59(e).

The Defendant fares no better if the Court were to analyze his motion under Rule 60(b). That Rule allows the Court "[o]n motion and just terms [to] relieve a party or [his] legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason that justifies relief." Fed.

---

electronic filing of documents with this Court. In addition, counsel under no obligation to contact them about their failure to respond to the motion.

R. Civ. P. 60(b). In addition to establishing one of the six grounds enumerated in Rule 60(b), the movant must also establish that his motion was timely filed, that he has a meritorious defense to the action, and that there would be no unfair prejudice to the nonmoving party by having the judgment set aside. <u>Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.</u>, 843 F.2d 808, 811 (4th Cir. 1998).

Rantzos alleges that the miscommunication that occurred between his attorneys and their subsequent failure to respond to the Motion for Summary Judgment constitutes the type of mistake, inadvertence or excusable neglect which would justify relief from the Order and Judgment in this case. Specifically, Rantzos contends that his failure to respond to the Motion for Summary Judgment was "simply an innocent oversight by counsel," and that he himself is "blameless" for counsel's inaction. [Doc. 25 at 9]. In support of this argument, Rantzos cites <u>August Fiberglass Coatings, Inc.</u>, <u>supra</u>, and <u>United States v. Moradi</u>, 673 F.2d 725 (4th Cir. 1982). In these cases, the Fourth Circuit recognized that, where an attorney's negligence or mistake results in the entry of a *default judgment* against a party, Rule 60 should be liberally construed so that "a blameless party [is] not . . . disadvantaged by the errors or neglect of his attorney." <u>Augusta Fiberglass</u>, 843 F.2d at 811 (quoting <u>Moradi</u>, 673 F.2d at 728).

Such liberal construction is not required when a court is asked to reconsider a grant of a motion for summary judgment.  See Universal Film Exchanges, Inc. v. Lust, 479 F.2d 573, 576 n.1 (4th Cir. 1973) (distinguishing cases involving default judgments from those involving summary judgment on the merits); Holliday v. Duo-Fast Md. Co., No. 89-1496, 1990 WL 74425, at *1 (4th Cir. filed May 4, 1990) (per curiam) ("Moradi . . . is distinguishable.  There we reversed a default judgment entered against Moradi by the district court after his answer was not accepted because his counsel failed to follow local rules. Here, the district court entered summary judgment on the merits."); see also Solaroll Shade and Shutter Corp. v. Bio–Energy Sys., Inc., 803 F.2d 1130, 1133 (11th Cir. 1986) (noting that district court's order "was not an extraordinary sanction entered to penalize counsel's failure to comply with a discovery request or some other pretrial order.  Instead, the court was duly deciding a motion before it to which appellant's counsel had failed to respond. Such an order does not abbreviate the adversary process.  Rather, it prevents a party's negligence from unduly extending that process.").

Rantzos argues that the Fourth Circuit has in fact applied a more liberal construction of Rule 60(b) in summary judgment cases, citing the unpublished decision of Primary Energy Systems, Inc. v. Friedrich Climate

<u>Master, Inc.</u>, No. 89-2431, 1990 WL 15619 (4th Cir. filed Feb. 14, 1990) (per curiam).  In that case, the day after the defendant filed a motion for summary judgment, the parties submitted a joint motion for an extension of the discovery period.  Along with the joint motion, defendant's counsel submitted a letter to the court explaining that through an oversight in his office, the plaintiff had not been timely served with a prior motion to compel, and that both parties wished to complete the exchange of written discovery and conduct certain depositions before the plaintiff responded to the defendant's summary judgment motion.  The letter further indicated that following this additional discovery, the defendant intended to request permission to file another motion for summary judgment.  <u>Id.</u> at *1.  As a result of the joint motion, as well as the defendant's letter to the court, the plaintiff did not respond to the defendant's motion for summary judgment.  <u>Id.</u> at *2.  The court, however, proceeded to rule on the summary judgment motion and granted judgment in the defendant's favor.  <u>Id.</u>

On appeal, the Fourth Circuit found that the defendant's letter to the court gave the reasonable impression to plaintiff's counsel that no action would be taken on the summary judgment motion and therefore, counsel's failure to respond to the motion was a "mistake" within the meaning of Rule 60(b)(1).  <u>Id.</u> The Court therefore held that the district court erred in failing

to grant relief from the judgment. Id. Such facts are readily distinguishable from the facts presented in the instant case. Here, there was no action taken by FDIC-R that led Rantzos's counsel to believe that a response to the motion was not necessary. Rather, Rantzos's counsel failed to notice the NEF pertaining to the motion and thus failed to bring the motion to the attention of his associate attorney who was actually working on the case. Primary Energy Systems, therefore, does not provide any support for the Defendant's argument that Rule 60(b) should be liberally construed to provide relief in the instant case.

The Fourth Circuit has repeatedly held that "[a] party that fails to act with diligence will be unable to establish that his conduct constituted excusable neglect pursuant to Rule 60(b)(1)." Robinson, 599 F.3d at 413; Thompson v E.I. DuPont De Nemours & Co., 76 F.3d 530, 533 (4th Cir. 1996) ("Inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect.") Evans v. United Life & Accident Ins. Co., 871 F.2d 466, 472 (4th Cir. 1989) ("a lawyer's ignorance or carelessness do not present cognizable grounds for relief under [Rule] 60(b)"); Universal Film, 479 F.2d at 576 (finding counsel's reliance on other parties to keep him informed of the case and deliberate failure to enter a notice of appearance and file answer may have been "grossly negligent,"

but could not "be deemed excusable neglect under Rule 60(b)(1)");

Holliday, 1990 WL 74425, at *2 ("The record indicates that the motion for summary judgment was properly served on counsel. His careless handling of the motion and his failure to respond because he did not 'realiz[e] what the Motion was' is not the kind of excusable neglect provided for in Rule 60(b)(1).").

For the reasons discussed above, the Court finds that Rantzos's attorneys failed to act with reasonable diligence in reviewing and responding to FDIC-R's Motion for Summary Judgment. This conduct does not constitute a mistake, inadvertence or excusable neglect sufficient to warrant relief under Rule 60(b)(1).

Most importantly, however, even if the Court found counsel's conduct to be excusable Rantzos would not be entitled to relief under Rule 60(b) because he has failed to establish a meritorious defense to the Plaintiff's claims. "A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." Augusta Fiberglass, 843 F.2d at 812. Here, Rantzos concedes that his counterclaims are precluded under 12 U.S.C. § 1823 and the D'Oench Duhme doctrine, which "prohibits claims based upon agreements which are not properly reflected in the official books or records

of a failed bank or thrift." Resolution Trust Corp. v. Allen, 16 F.3d 568, 574 (4th Cir. 1994) (citing D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942)). He contends, however, that he has a meritorious defense against FDIC-R's claim in that there was no consideration for the Commercial Guaranty as the execution and delivery of the Guaranty was independent of, and subsequent to, the July 22, 2008 Promissory Note. [Doc. 25 at 10-15].

It is well-established under North Carolina law that "a guaranty in writing, made at the time of a contract between two or more persons, is binding upon the guarantor, because it is founded upon the consideration which exists between the principal parties. But if it be made afterwards, without any new consideration, then it is not obligatory, and putting it in writing, if not under seal, will not help it." Green v. Thornton, 49 N.C. 230, 1856 WL 1696, at *2 (1856). North Carolina courts also have recognized, however, that "when the guaranty which is separate from the original indebtedness covers future as well as existing indebtedness, there is consideration for the guaranty apart from the principal indebtedness which was previously in existence." Gillespie v. DeWitt, 53 N.C. App. 252, 260, 280 S.E.2d 736, 742, disc. rev. denied, 304 N.C. 390, 285 S.E.2d 832 (1981). In Gillespie, the North Carolina Court of Appeals concluded that a

subsequent guaranty, which guaranteed the payment of "any and all indebtedness, liabilities and obligations of every nature and kind of said Debtor to said Bank, and every balance and part thereof, whether now owing or due, or which may hereafter, from time to time, be owing or due, and howsoever heretofore or hereafter created or arising or evidenced" was based on adequate consideration. Id. at 260-61, 280 S.E.2d at 743-44. Similarly, in International Harvester Credit Corp. v. Bowman, 69 N.C. App. 217, 316 S.E.2d 619, disc. rev. denied, 312 N.C. 493, 322 S.E.2d 556 (1984), the North Carolina Court of Appeals, citing Gillespie, held that a guaranty which extended to all obligations for which the debtor "is now or may hereafter become liable" was supported by adequate consideration. Id. at 221, 316 S.E.2d at 621-22.

Rantzos attempts to distinguish Gillespie and International Harvester on their facts, arguing that in these cases, the original promissory note contemplated future indebtedness and that credit was extended to the original borrower after the subsequent guaranty was made. Contrary to Rantzos's arguments, however, the North Carolina Court of Appeals considered only the language of the guaranties themselves in determining whether they were supported by adequate consideration. For example, in Gillespie, the Court noted that the "guaranty contract was based upon

consideration in the form of the guarantor's agreement to pay upon maturity and upon the principal debtor's default on any indebtedness, liability or obligation extended by the bank to the principal debtor in the future. *The guaranty agreement is clear on this point* and there is no issue of fact." 53 N.C. App. at 261, 280 S.E.2d at 743. The language of the underlying promissory note was simply not relevant to the Court's determination. In Int'l Harvester, the Court, concluding that Gillespie "controll[ed] on the facts," determined that the guaranty at issue was supported by adequate consideration, but went on to note "in *further* support" of its decision that the plaintiff had in fact extended credit to the debtor subsequent to the execution of the guaranty. Int'l Harvester, 69 N.C. App. at 221, 316 S.E.2d at 622 (emphasis added). That latter finding, however, was not necessary to the Court's determination that the guaranty, which guaranteed both future and present indebtedness was supported by adequate consideration.

In the present case, Rantzos's Commercial Guaranty clearly guarantees future as well as present indebtedness. By the plain language of this Agreement, Rantzos agreed to guarantee not only the original debt of Dion Holdings, but also future advances of credit to Dion Holdings. Therefore, under the reasoning of Gillespie and International Harvester, the Court concludes that Rantzos' Guaranty was supported by adequate

consideration apart from the original indebtedness to Dion Holdings and is enforceable by FDIC-R.[4]

In sum, the Court concludes that the granting of FDIC-R's Motion for Summary Judgment was legally correct and does not create a manifest injustice in this case. Alternatively, the Court concludes that Rantzos would not be entitled to relief under Rule 60(b) because he has failed to establish that his failure to respond to the Motion for Summary Judgment was the result of any mistake, inadvertence or excusable neglect or that he has a meritorious defense to the Plaintiff's action. Accordingly, the Court in the exercise of its discretion declines to vacate the Order and Judgment granting FDIC-R summary judgment against Defendant Rantzos. The Plaintiff's Motion for Relief is hereby denied.

# O R D E R

**IT IS, THEREFORE, ORDERED** that Defendant Paul Rantzos's Motion for Relief from Plaintiff's Motion for Summary Judgment and Motion

---

[4] The decision of <u>Carolina Eastern, Inc. Benson Agri Supply, Inc.</u>, 66 N.C. App. 180, 310 S.E.2d 393 (1984), which Rantzos cites in his Motion, does not compel a different result. In that case, the seller argued that the consideration for the subsequent guaranty was a promise of forbearance to sue for a certain period of time. <u>Id.</u> at 182, 310 S.E.2d at 395. The seller, however, presented no evidence of any forbearance agreement at the time of the parties' contract, and therefore, the Court concluded that the guaranty was not supported by sufficient consideration. <u>Id.</u> at 182-83, 310 S.E.2d at 395. These facts are readily distinguishable from the facts presented here.

to Reconsider Plaintiff's Motion for Summary Judgment Against Defendant

Paul Rantzos [Doc. 24] is **DENIED**.

**IT IS SO ORDERED**.

Signed: April 29, 2013

Martin Reidinger
United States District Judge